COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Senior Judge Frank

JOEL EAST DAVIS, II

v.     Record No. 1777-17-2

CHARLOTTE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JUNE 26, 2018

FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
Kimberley S. White, Judge

(Michael Thomas Trent; The Trent Law Practice, PLC, on brief), for
appellant.

(Michael J. Brickhill; David P. Mitchel; T. Michael Jones, Guardian
*ad litem* for the minor child; Michael J. Brickhill, P.C.; The Jones
Law Firm, P.C., on brief), for appellee.

Joel East Davis, II (father) appeals the orders terminating his parental rights and approving

the foster care goals of termination and adoption.  Father argues that the circuit court "erred in

accepting the Department's foster care plan with the goals of termination and adoption and in

terminating [father's] parental rights because the evidence was not sufficient as a matter of law to

show" that (1) "termination at that time was in the best interests of the child;" and (2) father "failed

to substantially remedy the conditions that led to removal, and because there was good cause for any

failure, namely incarceration."  Upon reviewing the record and briefs of the parties, we conclude

that this appeal is without merit.  Accordingly, we summarily affirm the decision of the circuit

court.  See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Father and Charlene Williams (mother) are the biological parents of the child who is the subject of this appeal. In December 2014, approximately eighteen months after the child's birth, the Charlotte County Department of Social Services (the Department) received a child protective services complaint alleging that the parents physically abused and neglected the child and were using illegal drugs. The Department investigated and found that the house was "fine." In February 2015, the Department asked father to take a drug test, and he tested positive for amphetamines and benzodiazepines. The Department opened a foster care prevention case and offered parent aide services to the family. The Department also offered employment services through the Virginia Initiative for Employment not Welfare (VIEW) program. In November 2015, the Department received a second child protective services complaint alleging that the parents physically abused the child. The Department continued to provide services to the family, while they obtained suitable housing and father found a job.

In early 2016, father advised the Department that their housing situation was not stable again, and both father and mother had pending criminal charges. In April 2016, father tested positive for oxycodone, but he had a valid prescription. At a family partnership meeting, it was agreed that the child would be placed with the paternal grandmother; however, this placement was not successful due to the paternal grandmother's housing situation. Another placement with the child's paternal great-aunt was not successful, so the child was placed with the maternal great-aunt for several weeks. In July 2016, the Department gave father another drug test, and he tested

- 2 -

negative for all drugs. The Department returned the child to the parents and paternal grandmother's care, after they obtained housing and father found a job.[1] The Department continued to offer the parent aide services, and the family "showed signs of improvement." However, father lost his job in August 2016, and the family was evicted from their home in September 2016.

On September 13, 2016, the Department placed the child in foster care due to concerns about housing and drug use. Both father and mother tested positive for cocaine. At the time of the removal, the child was at the home of the maternal great aunt. The child was "thin," and his clothes were "unclean." After the child entered foster care, a pediatrician examined him and determined that the child was underweight for his age and suffered from multiple bug bites. The Department also had concerns about the child's development because, despite being three years old, he was not very vocal and had difficulty communicating. On October 13, 2016, the Charlotte County Juvenile and Domestic Relations District Court (the JDR court) found that the child was abused and/or neglected.

The Department provided numerous services to father. The Department referred father and mother for a substance abuse evaluation, but neither went for the evaluation.[2] On October 20, 2016, father tested negative for drugs. The Department arranged for father to visit with the child, and he regularly visited with the child until he was incarcerated. In November 2016, father pleaded guilty to shoplifting, third offense, and based on that conviction, the Stafford County Circuit Court found that he violated his probation. Father's expected release date was April 27, 2018.

---

[1] At that time, father lived with the paternal grandmother and mother.

[2] Father told the social worker that he scheduled an appointment for the evaluation, but the social worker never received any confirmation of the appointment. Father testified that his appointment was scheduled for the week after he was incarcerated on November 9, 2016.

On July 11, 2017, the JDR court approved the foster care goal of adoption. On August 11, 2017, the JDR court terminated father's parental rights.[3] Father appealed to the circuit court.

On October 16, 2017, the parties appeared before the circuit court. The Department presented evidence that the child was in a potential adoption placement. The social worker testified that the child had been with the same family since he entered foster care and was doing "really, really well." The social worker testified that the child was speaking more and was easier to understand.[4] The foster mother also testified about the progress that the child has made. She said that when the child first entered foster care, he only said two words, but as of the date of the hearing, he "talk[ed] all the time." The foster mother said that he was learning quickly at school, attending speech therapy at school, and doing well socially with his peers.

Father expressed his desire to remain in the child's life and testified about the programs in which he participated at the prison. Father completed a substance abuse course and an anger management class, and at the time of the circuit court hearing, he was taking a nine-week parenting class and a life skills course. He also was taking GED classes and had signed up for a vocational class. Father explained that he applied to six halfway houses to go to after he was released from prison. He acknowledged that the program at the halfway house lasted three to six months and that the child could not live with him there. Father had not provided to the Department copies of the certificates showing his completion of classes or his plan for taking care of the child upon his release.

After hearing all of the evidence and argument, the circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(2) and approved the goals of termination and adoption. The

---

[3] The JDR court also terminated mother's parental rights. She appealed to the circuit court, and the circuit court terminated her parental rights.

[4] Father testified that the child used words to communicate with him and mother and that the child played well with his peers.

circuit court held that the child needed "stable and consistent housing" and "to be raised by non-substance abusers." On January 10, 2018, the circuit court entered the orders terminating father's parental rights and approving the foster care goals of termination and adoption. This appeal followed.

## ANALYSIS[5]

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

### *Best interests of the child*

Father argues that the evidence was insufficient to prove that the termination of his parental rights and adoption of the child were in the best interests of the child. He emphasizes that he had a strong relationship with the child and was an active caregiver. He asserts that the child was not aware of the foster care proceedings and would be in the same situation with the same foster care family upon father's release from prison.

"When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

---

[5] Contrary to the Department's arguments, father did not waive his objection to the approval of the foster care goals of termination and adoption. Father argued against termination and adoption in his closing argument and noted his objections to the permanency planning order. In a bench trial, an appellant can preserve his issues for appeal in a motion to strike, in closing argument, in a motion to set aside the verdict, or in a motion to reconsider. Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*). Therefore, we find that father preserved his arguments for appeal.

After hearing all of the evidence and argument, the circuit court held that it was in the child's best interests "to be in . . . stable consistent housing, to be raised by parents who do not engage in substance abuse and to be raised by parents who seek and receive substance abuse counseling as needed." The circuit court found that as of the date of the hearing, "neither parent [was] in a position to offer stable consistent housing." Housing remained a constant problem throughout the years that the Department was involved with the family.

In addition, substance abuse was an ongoing issue. The circuit court found that the Department recommended father get substance abuse treatment in 2015 and at the family partnership meeting in April 2016. However, father had numerous excuses, such as working nights, for not seeking substance abuse treatment at the time. Father testified that in September 2016, he tried to schedule an appointment for a substance abuse evaluation, but the date of his appointment was after he was incarcerated. The circuit court held that father's delay in seeking treatment for his substance abuse problem "is a huge issue."

Furthermore, the Department presented evidence that when the child entered foster care, the child had speech and communication problems, as well as developmental delays. However, once the child was placed with his foster family, he obtained speech therapy and started talking more. The circuit court stated that it is in a child's best interest to live in an environment "where one's language is developed and encouraged, where one is encouraged to interact socially with others, where one is properly fed, [and] where one is properly cleaned . . . ."

At the time of the circuit court hearing, father was still incarcerated and did not expect to be released until April 2018. Then, he hoped to go to a halfway house for three to six months. He was not able to meet the child's needs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62

Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc.

Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Considering the entire record, the circuit court did not err in finding that the evidence was

sufficient to prove that the termination of father's parental rights and adoption were in the child's

best interests.

<em>Code § 16.1-283(C)(2)</em>

Father argues that the evidence was insufficient to prove that he failed to remedy

substantially the conditions that led to the child's removal and that he did not have good cause for

his failure to remedy.

The circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(2),

which authorizes a court to terminate a parent's parental rights if:

> [t]he parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that

created the original danger to the child, but on the demonstrated failure of the parent to make

reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d

765, 772 (2005). "Considerably more 'retrospective in nature,' subsection C requires the court

to determine whether the parent has been unwilling or unable to remedy the problems during the

period in which he has been offered rehabilitation services." Id. (quoting City of Newport News

Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

> While long-term incarceration does not, per se, authorize
> termination of parental rights . . . it is a valid and proper
> circumstance which, when combined with other evidence
> concerning the parent/child relationship, can support a court's

> finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Father contends that he had "good cause" for not remedying the problems that led to the child's placement into foster care because he was incarcerated for the majority of the time that the child was in foster care. He emphasizes that after the child's removal but before his incarceration, he tested negative for drugs, had a home, and worked odd jobs. Then, during his incarceration, he completed substance abuse and anger management classes and was participating in parenting and life skills classes. He also asserts that he had a plan for housing and employment after his release.

However, the circuit court found that father's post-release plan had "a lot of contingencies" and was not reasonable, especially considering that "the child will have spent one-third of his life in foster care" by the time that father was released from prison. The circuit court recognized that father's "timeline was cut short, but it was really cut short by his own making, because of the criminal conviction and because of the probation violation."

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003).

Contrary to father's arguments, the circuit court did not err in finding that the evidence was sufficient to terminate his parental rights pursuant to Code § 16.1-283(C)(2) and approving the goals of termination and adoption.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.